# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| KIRBY SMART, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 15-cv-1598 |
| | ) | |
| v. | ) | Judge Robert M. Dow, Jr. |
| | ) | |
| DHL EXPRESS (USA), INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant DHL Express (USA), Inc.'s motion for summary judgment [24]. For the reasons set forth below, Defendant's motion [24] is granted.

**I.     Background**

In 1986, Airborne Express hired Plaintiff Kirby Smart as a driver and dock worker.[1] Drivers are responsible for picking up and delivering packages, and typically spend the majority of their shifts driving a company-provided truck. In 2003, DHL Express (USA), Inc. acquired Airborne. Plaintiff continued to work with DHL until August 2010.

Throughout his employment with DHL and Airborne (collectively, "Defendant"), Plaintiff was a member of Teamsters Local Union No. 705 (the "Union"). The Union entered into a collective bargaining agreement ("CBA") with Defendant, which governs the employment terms and conditions of all of Union members, including Plaintiff. [26-3.] The CBA also provides a grievance procedure through which employees may challenge any disputes with their employer or adverse employment decisions. Article 21 of the CBA provides that employees can

---

[1] The Court takes the relevant facts from the parties' Local Rule 56.1 statements [26; 28] and their responses to each other's Rule 56.1 statements [27; 33]. The Court construes the facts in the light most favorable to the nonmoving party—here, Plaintiff.

be terminated for "just cause." *Id.* at 47. One of the enumerated examples of "just cause" is "Dishonesty (includes theft)." *Id.*

Plaintiff was disciplined three times for dishonesty-related infractions while employed by Airborne. In December 1987, Plaintiff was accused of "stealing company time" and "falsifying company documents." [26-8.] This incident involved accusations that Plaintiff ran personal errands and made unauthorized stops while still "on the clock," which meant he was still paid by Airborne for this time. [26, ¶ 20.] He was accused of similar violations in February 1993 and May 1994. [26-6; 26-7.] All three incidents followed a similar pattern: Airborne terminated Plaintiff, he filed a grievance, and he was reinstated after union-negotiated settlements. [26, ¶ 21.] Plaintiff was also explicitly warned that he could be terminated for repeat offenses. *Id.*

Fast-forward more than sixteen years. In July 2010, Plaintiff's co-workers complained to Plaintiff's supervisor, Joseph Yates, that Plaintiff was watching videos in his DHL truck while still "on the clock." [26, ¶ 22.] In response, Yates hired a third-party private investigator to conduct surveillance of Plaintiff in July and August. The investigator observed Plaintiff take multiple personal trips to Blockbuster Video during his shifts on July 12 and 14, 2010, amounting to several hours where Plaintiff was not performing work but still on the clock. The investigator's observations, photographs, and video surveillance were memorialized in a written report. [See 26-12.] Yates and his supervisor, Phillip Rinaldi, also examined Plaintiff's pick-up and delivery reports from July 12 and 14, and found "large, unexplained periods of time where it appeared that [Plaintiff] was not working." [26-10, ¶¶ 19–20.] Based on the investigator's report and Defendant's own investigation, Yates met with two other DHL management personnel and they all concluded there were sufficient grounds for just cause to terminate Plaintiff's employment. [27, ¶¶ 31–32.]

On August 10, 2010, Yates, Rinaldi, and other DHL personnel met with Plaintiff and his union steward. Plaintiff was told that his co-workers had complained that he was watching videos in his truck and an investigator had provided them with video and photographs to show that he had been "stealing time." [27, ¶ 34.] He was then given a termination letter, which references the two dates that Plaintiff "dishonestly stole company time" "while on duty," the provision of the CBA this violated, and that Plaintiff would be immediately discharged. [26-4.]

The next day, Plaintiff filed a union grievance, alleging that Defendant violated two provisions of the CBA when terminating him for dishonesty. [26-5.] The grievance makes no reference to racial discrimination. This omission is likely because, as Plaintiff concedes, he did not believe at the time that he was being terminated because of his race. [27, ¶ 36.] On August 13, Yates and Rinaldi met with Plaintiff and other union officials for a grievance review. Yates and Rinaldi presented the details of the investigation and the attendees viewed and discussed the investigator's surveillance footage and the photographs. *Id.* ¶¶ 37–39. Plaintiff admitted that he went to Blockbuster during his route for personal reasons, but maintained this occurred during his lunch break. He also contested other factual conclusions from the investigation. [28, ¶¶ 7, 9.] On August 23, the group met again. This time, Yates and Rinaldi made the investigator available to Plaintiff for additional questions and to explain the results of his investigation. Throughout these proceedings, no one referenced Plaintiff's prior terminations for stealing time by Airborne in 1994, 1993, and 1987. *Id.* ¶ 10.

Ultimately, Defendant decided to uphold Plaintiff's termination. Plaintiff requested that his union proceed to arbitration on his grievance, but they declined to so. [27, ¶¶ 43–45.] It appears this dispute would not have advanced much further but for events that occurred six months later. On February 23, 2011, Defendant accused another of its drivers, Vince Abbott, of

deceitful conduct. Specifically, Abbott was accused of "falsifying attempts"—claiming to try to deliver packages, but never actually making any attempt to do so—by recording that he made twelve delivery attempts in a five-minute period. [26, ¶¶ 47–48.] Abbott was terminated, and the union filed a grievance. Through settlement negotiations with Yates and evidence presented by the Union, Abbott's termination was reduced to suspension without pay and he was not otherwise disciplined. *Id.* ¶¶ 49–51. For purposes of this case, one more fact is relevant: Plaintiff is African American and Abbott is Caucasian.

Based on these events (and a few others discussed below), Plaintiff filed this suit alleging discrimination on the basis of race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et seq.*, and 42 U.S.C. § 1981. Defendant moved for summary judgment [24].

## II.     Legal Standard

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To establish that a material fact is undisputed, the movant "must support the assertion by * * * citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations * * *, admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1). In determining whether summary judgment is appropriate, the Court should construe all facts and reasonable inferences in the light most favorable to the non-moving party. See *Carter v. City of Milwaukee*, 743 F.3d 540, 543 (7th Cir. 2014). Rule 56(a) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against any party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party would bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Put

another way, the moving party may meet its burden by pointing out to the court that "there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

To avoid summary judgment, the opposing party then must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (internal quotation marks and citation omitted). For this reason, the Seventh Circuit has called summary judgment the "put up or shut up" moment in a lawsuit—"when a party must show what evidence it has that would convince a trier of fact to accept its version of events." See *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2003) (citation omitted). The "mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." *Anderson*, 477 U.S. at 252.

**III.    Analysis**

Plaintiff alleges that Defendant refused to reinstate him to his job because of his race in violation of Title VII and Section 1981.[2] "The same requirements for proving discrimination apply to claims under Title VII" and Section 1981. *Egonmwan v. Cook Cty. Sheriff's Dep't*, 602 F.3d 845, 850 n.7 (7th Cir. 2010).

In *Ortiz v. Werner Enterprises Inc.*, the Seventh Circuit eliminated the "direct" versus "indirect" evidence distinction from analysis of employment discrimination claims. 834 F.3d 760, 765 (7th Cir. 2016); *Cole v. Bd. of Trustees of N. Illinois Univ.*, 838 F.3d 888, 899 (7th Cir. 2016) (Courts must "look past the 'ossified direct/indirect paradigm.'"). Instead, "[e]vidence

---

[2] 42 U.S.C. § 2000e-2(a)(1) ("It shall be an unlawful employment practice for an employer * * * to fail or refuse to hire or to discharge any individual * * * because of such individual's race"); 42 U.S.C. § 1981(a) ("All persons * * * shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.").

must be considered as a whole, rather than asking whether any particular piece of evidence proves the case by itself." *Ortiz*, 834 F.3d at 765. The "legal standard * * * is simply whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race * * * caused the discharge or other adverse employment action." *Id.* The "sole question" that must be answered is "[w]hether a reasonable juror could conclude that [Plaintiff] would have kept his job if he had a different ethnicity, and everything else had remained the same." *Id.* at 764.

*Ortiz*, however, did not alter the "burden-shifting framework" announced by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Id.* at 766. Rather, *Ortiz* simply makes clear that "*McDonnell Douglas* is not the only way to assess circumstantial evidence of discrimination." *David v. Bd. of Trustees of Cmty. Coll. Dist. No. 508*, 2017 WL 129114, at *4 (7th Cir. Jan. 13, 2017). "In adjudicating a summary judgment motion, the question remains: has the non-moving party produced sufficient evidence to support a jury verdict of intentional discrimination?" *Id.* Thus, the Court will first assess whether Plaintiff has established a prima facie case of discrimination under the *McDonnell Douglas* framework, and then "assess cumulatively all the evidence presented by [Plaintiff] to determine whether it permits a reasonable factfinder to determine that [the decision not to reinstate him] was attributable to" his race. *Id.*

### A. *McDonnell Douglas*

Under *McDonnell Douglas*, Plaintiff has the initial burden to show that (1) he is a member of a protected class; (2) he performed reasonably on the job in accordance with his employer's legitimate expectations; (3) despite his reasonable performance he was subjected to an adverse employment action; and (4) similarly situated employees outside of his protected class were treated more favorably. See *David*, 2017 WL 129114, at *5. "If the plaintiff satisfies that burden, then the employer must articulate a legitimate, nondiscriminatory reason for the

adverse employment action, at which point the burden shifts back to the plaintiff to submit evidence that the employer's explanation is pretextual." *Id.* (citation and internal quotation marks omitted). Pretext means "'a dishonest explanation, a lie rather than an oddity or an error.'" *Sweatt v. Union Pac. R. Co.*, 796 F.3d 701, 709 (7th Cir. 2015) (citation omitted).

Defendant advances two arguments for why summary judgment should be granted. First, Plaintiff cannot establish a prima facie case of discrimination because he has not identified a similarly situated comparator. Second, Plaintiff cannot show that Defendant's explanation for his termination and failure to reinstate was pretextual. The Court takes each argument in turn.

### 1. Similarly Situated Employee

"Similarly situated employees must be directly comparable to the plaintiff in all material respects, but they need not be identical in every conceivable way." *Coleman v. Donahoe*, 667 F.3d 835, 846 (7th Cir. 2012) (citation and internal quotation marks omitted). The "analysis calls for a 'flexible common sense' examination of all relevant factors." *Id.* (citation omitted). The "purpose" of the inquiry "is to eliminate other possible explanatory variables, 'such as differing roles, performance histories, or decision-making personnel, which helps isolate the critical independent variable'—discriminatory animus." *Id.* (citation omitted).

Plaintiff must show that his comparator "dealt with the same supervisor, [was] subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." *Gates v. Caterpillar, Inc.*, 513 F.3d 680, 690 (7th Cir. 2008) (citation and internal quotation marks omitted). Importantly, "[a]n employee who does not have a similar disciplinary history and performance record as the plaintiff is not similarly situated." *Simpson v. Franciscan All., Inc.*, 827 F.3d 656, 662 (7th Cir. 2016); accord *Harris v. Office of the Chief Judge of the*

*Circuit Court of Cook Cty.*, 2016 WL 7228703, at *3 (7th Cir. Dec. 13, 2016); *Amrhein v. Health Care Serv. Corp.*, 546 F.3d 854, 860 (7th Cir. 2008). The "the similarly-situated inquiry often hinges on whether co-workers 'engaged in comparable rule or policy violations' and received more lenient discipline." *Coleman*, 667 F.3d at 850.

The only comparator that Plaintiff identifies is Abbott. [27, ¶ 52.] Plaintiff argues that both men were drivers for Defendant, were terminated by Yates, were subject to the same standards (*e.g.*, the CBA), and engaged in similar dishonesty-related infractions. [30, at 4–5.] According to Plaintiff, the only material difference between them is their race. *Id.* Defendant offers four reasons why Abbott is not similarly situated to Plaintiff. First, the Union secured Abbott's reinstatement through a settlement, while the Union declined to pursue arbitration on Plaintiff's behalf after participating in three meetings and hearing evidence related to Plaintiff's termination. Second, Plaintiff had been disciplined three prior times for the same offense and Abbott has no such disciplinary history. Third, Abbott was terminated and reinstated six months *after* Plaintiff's termination, and thus, Defendant argues, Abbott cannot serve as a comparator as a matter of law. See *Lillie v. Chartwells*, 2007 WL 951900, at *5 (N.D. Ill. Mar. 26, 2007). Fourth, Defendant views falsifying delivery attempts to be a less serious offense than stealing time, which means both men did not commit comparable offenses.

The first two differences are sufficient to show that Abbott is not similarly situated to Plaintiff. In regard to the grievance process and the Union's involvement, Plaintiff is correct that both he and Abbott were terminated and the Union filed grievances on behalf of both men. That is where their similarities end. Only Plaintiff was the subject of a third-party investigation that produced video and photograph evidence that showed multiple personal trips during his routes. Plaintiff admitted that he went to Blockbuster for a "personal reason" and while he was "on the

8

clock." [26-2, at 77:12–17.]. He does not argue that the Union presented any evidence to support his reinstatement during these meetings. And, ultimately, the Union declined to pursue arbitration on Plaintiff's behalf and did not return his phone calls. [26, ¶ 44.] In contrast, Abbott was not subject to a similar investigation (or at least there is nothing in the record to show he was) and there was no photographic or video evidence to substantiate his termination.[3] Unlike in Plaintiff's case, the Union presented evidence in support of Abbott's reinstatement. [27, ¶ 50.] The nature of the Union's involvement, the strength of evidence produced by a third-party to substantiate the termination, and the degree to which Defendant's decisions were contested all show that the circumstances of Abbott's and Plaintiff's terminations were meaningfully different.

In addition, this was Plaintiff's fourth termination for stealing time. Before February 2011, Abbott had never been disciplined or terminated for dishonesty or falsification. [27, ¶ 51.] Plaintiff argues that his prior incidents were 16, 17, and 23 years before the 2010 termination, they occurred at DHL's predecessor (Airborne), and Defendant did not expressly reference those terminations during the grievance proceedings. [30, at 6.] But none of those facts make Abbott any more similarly situated to Plaintiff—a hurdle Plaintiff must overcome before evidence of pretext becomes relevant. *Herron v. DaimlerChrysler Corp.*, 388 F.3d 293, 300 (7th Cir. 2004) ("The plaintiff must meet each prong of the prima facie test before reaching pretext."). Based on the evidence in the record, Abbott's and Plaintiff's disciplinary history are far too dissimilar to be considered similarly situated. *Simpson*, 827 F.3d at 662; *Harris*, 2016 WL 7228703, at *3; *Amrhein*, 546 F.3d at 860. Because Plaintiff identifies no one other than Abbott as a comparator, he has failed to satisfy his prima facie case.

---

[3] Abbott also appears not to have conceded any of facts underlying his termination. [26-12, at 62 (claiming that he visited every stop, but they were all closed).]

## 2. Pretext

Even assuming that Plaintiff had satisfied his prima facie case, he also fails to offer evidence to demonstrate a triable issue of fact on whether Defendant's stated nondiscriminatory reason for terminating and not rehiring Plaintiff—his theft of time—was pretextual. To show pretext, "the plaintiff must present evidence suggesting that the employer is dissembling." *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 635 (7th Cir. 2011). "The question is not whether the employer's stated reason was inaccurate or unfair, but whether the employer honestly believed the reason it has offered to explain the discharge." *Id.*; accord *Coleman*, 667 F.3d at 852 ("It is not the court's concern that an employer may be wrong about its employees performance, or may be too hard on its employee."). The "only question is whether the employer's proffered reason was pretextual, meaning that it was a lie." *Coleman*, 667 F.3d at 852; *Brill v. Lante Corp.,* 119 F.3d 1266, 1273 (7th Cir. 1997) ("[T]he question is not whether the employer's performance ratings were *right* but whether the employer's description of its reasons is *honest*." (internal quotations and punctuation omitted)). "Where, as here, the employer contends that the plaintiff's job performance was wanting, the plaintiff must do more than dispute the validity of the employer's criticisms." *O'Leary*, 657 F.3d at 635. Rather, Plaintiff must "identify such weaknesses, implausibilities, inconsistencies, or contradictions" in asserted reason such "that a reasonable person could find [it] unworthy of credence." *Coleman*, 667 F.3d at 852.

Plaintiff's evidence of express discriminatory animus or motive is nonexistent. In fact, at the time of his termination, Plaintiff did not believe he was being terminated because of his race. [27, ¶ 36.] He has no evidence that the private investigator harbored discriminatory motives. *Id.* ¶ 27. He does not identify any contradictions in Defendant's asserted reason for terminating

him. See *Coleman*, 667 F.3d at 852. He simply fails to show that Yates or Rinaldi had a discriminatory motive or a history of discrimination or offer clear evidence of racial animus.

Instead, Plaintiff points to five "examples" that he believes shows pretext.[4] [30, at 11.] First, Plaintiff argues that Defendant "singled out" Plaintiff and two other African American co-workers "five to eight times" for drug tests between January 2008 and July 2010, while he "only observed one white co-worker subjected to drug testing of his urine, one time." [30, at 7.] Plaintiff remembers the name of only one African American co-worker who was tested. *Id.*

There are a number of problems with this example. Most obviously, these allegations are entirely unsubstantiated. See *Thomas v. Christ Hosp. & Med. Ctr.*, 328 F.3d 890, 892–93 (7th Cir. 2003) ("Conclusory allegations alone cannot defeat a motion for summary judgment."). Regardless, they are fatally vague. Plaintiff provides a thirty-month window in which these events occurred. Two out of the four co-workers are unnamed. He does not specify precisely how many times he (or two of his co-workers) took a drug test. He also cannot identify who ordered the drug tests. Unless this person was somehow involved in or influenced Plaintiff's termination, this example is irrelevant. See *Rozskowiak v. Vill. of Arlington Heights*, 415 F.3d 608, 612 (7th Cir. 2005) ("Derogatory statements made by someone who is not involved in

---

[4] Defendant moves to strike most of these examples, arguing they are submitted in violation of Local Rule 56.1(b) because Plaintiff fails to cite sufficient admissible evidence in support. [See 33.] "The purpose of the 56.1 statement is to identify for the Court the evidence supporting a party's factual assertions in an organized manner[;] it is not intended as a forum for factual or legal argument." *Malec v. Sanford*, 191 F.R.D. 581, 585 (N.D. Ill. 2000). Here, the Court will exercise its discretion in the direction of leniency and consider Plaintiff's 56.1 statements and responses that arguably meet the requirements of the local and federal rules. *Modrowski v. Pigatto*, 712 F.3d 1166, 1169 (7th Cir. 2013) (making clear that, although district courts have discretion to require strict compliance with Rule 56.1, "[i]t does not follow * * * that district courts cannot exercise their discretion in a more lenient direction"). The Court carefully reviews the parties' statements of material facts and eliminates from consideration any argument, conclusions, and assertions that are unsupported by the documented evidence of record offered in support of the statement. See, *e.g.*, *Sullivan v. Henry Smid Plumbing & Heating Co., Inc.*, 2006 WL 980740, *2 n.2 (N.D. Ill. Apr. 10, 2006); *Tibbetts v. RadioShack Corp.*, 2004 WL 2203418, at *16 (N.D. Ill. Sept. 29, 2004). Where a party has offered a statement of fact without offering proper evidentiary support, the Court does not consider that statement. See L.R. 56.1; see also *Malec*, 191 F.R.D. at 583–85.

making the employment decision at issue are not evidence that the decision was discriminatory."). In fact, the lack of any obvious connection to this case was confirmed by Plaintiff when he testified at his deposition that this drug testing was unrelated to his claims here. [See 26-2, at 123:11–14.]

Moreover, Plaintiff offers nothing to explain why he thinks the unnamed supervisor or supervisors ordered drug tests to "single[] out" African Americans at DHL. [29, ¶ 1]; *Selzer v. Lumen Energy Corp.*, 5 F. App'x 531, 533 (7th Cir. 2001) ("[S]peculation does not create a genuine issue of fact necessary to survive summary judgment."). Attributing any racial animus to Defendant for this drug testing also seems directly undermined by the fact one of the four coworkers in his example is Caucasian—and that covers only the coworkers that Plaintiff claims he observed directly. Plaintiff does not submit evidence showing how many of Defendant's workers were actually drug tested over this thirty-month period or their racial breakdown. Thus, Plaintiff's scattered and incomplete description of these events, the lack of any supporting evidence, and the absence of any discernable connection to his termination based on time, personnel, or other distinguishing characteristics render this "example" insufficient to shows a genuine dispute of material fact.

Second, Plaintiff alleges that between January 2008 and July 2010, he saw Abbott enter a staff meeting "two to seven minutes late * * * about six or eight times." [29, ¶ 2.] Each time, Rinaldi told Abbott something to the effect of, "Don't worry about it, I'll punch you in." *Id.* Plaintiff then speculates that this "meant Rinaldi would arrange to have Abbott marked as arriving on time at meetings" so that Abbott would avoid disciplinary action. *Id.* Plaintiff does not recall any African American worker receiving similar treatment. *Id.*

Again, Plaintiff does not offer any record evidence to show that these events occurred or any reason to believe they were racially motivated. In fact, Plaintiff does not even know if Rinaldi ultimately marked Abbott as arriving on time since he did not personally observe this. [See 26-2, at 138:13–17.] Thus, he can only speculate by what Rinaldi "meant" or that this action (if any) was taken for race-related reasons. See *Roney v. Illinois Dep't of Transp.*, 376 F. Supp. 2d 857, 864 (N.D. Ill. 2005) (rejecting Plaintiff's "uncorroborated, speculative and conclusory testimony and statements"); *E.E.O.C. v. Admiral Maint. Serv., L.P.*, 174 F.R.D. 643, 649 (N.D. Ill. 1997) (striking portions of affidavit based on "blatant" speculation). There is also nothing about this interaction that suggests "similarly situated employees outside the protected group *systematically* received better treatment." *Teruggi v. CIT Grp./Capital Fin., Inc.*, 709 F.3d 654, 659 (7th Cir. 2013) (emphasis added). Plaintiff was never disciplined for being late, and he does not identify any other African American employee who was marked tardy. [See 26-2, at 139:1–3.] "To be convincing, [Plaintiff's] evidence must point directly to a discriminatory reason for the employer's action." *Teruggi*, 709 F.3d at 659 (internal quotation marks omitted). At best, Plaintiff's assertions provide a basis to speculate that Rinaldi may have excused Abbott's tardies. These events do not suggest race discrimination or any "systematically" different treatment of employees of different races at DHL. *Id.* ("[A]n amorphous litany of complaints about a myriad of workplace decisions" "does not point to discrimination." (citation and internal quotation marks omitted)).

Third, Plaintiff argues that Defendant showed "discriminatory animus" when it argued in its opening brief that Abbott's "falsifying attempts" infraction was "less serious" than Plaintiff's "stealing time" infraction. [30, at 8.] According to Plaintiff, both violations involve paying an

13

employee for not working and Defendant's unpersuasive distinction "constitutes ambiguous behavior by [Defendant] towards [Plaintiff]." *Id.*

This argument is a non-starter. Nothing about the particular arguments that Defendant chose to advance in their briefs in May 2016 shows that Yates and Rinaldi were acting with discriminatory animus when they terminated Plaintiff in August 2010. See *Harris*, 2016 WL 7228703, at *3 ("defendants' litigation conduct, even if evasive, says nothing about the authenticity of their stated reasons for disciplining him"). Furthermore, Plaintiff simply asserts that Defendant *should* view stealing time and falsifying deliveries as similarly seriousness infractions. He does not present any evidence that Defendant—or anyone else—actually agrees with him. According to Yates's affidavit, the "stealing time" infraction is treated more seriously because it involves "deliberately deceiving" DHL to pay unearned wages to the employee. [26-10, ¶ 27.] Falsifying an attempt to deliver packages does not involve the same deliberate deceit that causes the employee to be paid unearned wages.[5] Plaintiff could have deposed Yates on the apparent similarity of these transgressions, but he did not. He also could have submitted evidence to show that Defendant typically treats these infractions identically, but he did not. Thus, Plaintiff offers no evidence by which a jury could conclude that Defendant's view is not honestly held. In short, Plaintiff's unsupported contention that Defendant failed to persuasively distinguish these two infractions is a far cry from presenting evidence that Defendant's proffered reason at the time of his termination was a lie. *Coleman*, 667 F.3d at 852.

Fourth, Plaintiff repeats his argument that Defendant's "failure to refer to [his three prior disciplinary] incidents at the grievance proceedings, the age of the incidents, and the fact that

---

[5] This infraction covers employees who simply overstate the number of attempted deliveries during their route in an effort to show they are more efficient or productive worker. In that scenario, the employee is not paid "unearned wages" as they are working the entire time. The same cannot be said of an employee accused of "stealing time," which inherently involves payment for work while not working.

they occurred at another company meant that [Defendant] only revived them for purposes of this case" and "use of the prior incidents was a pretext for discrimination." [30, at 9.] But Defendant does not contend these decade-old incidents were why Plaintiff was terminated. [See 32, at 9.] Rather, Defendant states that it terminated Plaintiff was because he was stealing time by running personal errands at Blockbuster on two days in July 2010. Nothing about the fact that Defendant uses Plaintiff's prior disciplinary history to show that he is not similarly situated to Abbott means that Plaintiff's 2010 misconduct was not the genuine reason for his termination.

Fifth, Plaintiff submits a declaration referencing the fact that the Equal Employment Opportunity Commission has sued Defendant for race discrimination over its route assignments, alleging that Defendant "frequently assigned black drivers only to black neighborhoods on the south and west side of Chicago." See *E.E.O.C. v. DHL Exp. (USA), Inc.*, No. 10-cv-6139 (N.D. Ill.); [29, ¶ 5]. Plaintiff is a member of that class action, and claims to have been assigned to routes in predominately African American neighborhoods 75 percent of the time. [29, ¶ 5.] Plaintiff argues that this shows Defendant "demonstrated discriminatory animus." [30, at 9.]

Plaintiff cannot bolster his own case by pointing to allegations of a completely separate and irrelevant lawsuit. The distinct, unproven allegations involving unrelated employment decisions and unidentified supervisors in connection with route assignments are not evidence that Yates's and Rinaldi's stated reason for terminating Plaintiff here was pretextual. Plaintiff fails to identify any factual nexus between that case and this one. Nor does Plaintiff create a triable issue of fact in his race discrimination case simply because Defendant has been sued for race discrimination before—albeit for totally unrelated conduct. Plaintiff cannot collaterally litigate unrelated issues in the *E.E.O.C.* route assignment case as part of his employment lawsuit under

15

the guise of offering amorphous circumstantial evidence of pretext. One has nothing to do with the other—a fact Plaintiff conceded at his deposition. [26-2, at 62:4–13.]

Finally, to the extent that Plaintiff contends that he can avoid summary judgment merely by contesting whether Defendant had sufficient evidence to conclude that he spent "nearly half of one day" running personal errands on July 12 and 14, 2010 [30, at 5], he is mistaken. To show pretext, "[P]laintiff must do more than dispute the validity of the employer's criticisms." *O'Leary*, 657 F.3d at 635. He must offer evidence such that a jury could find that Defendant's stated reason for his termination was a lie. *Coleman*, 667 F.3d at 852. He has not done so.

Therefore, applying the *McDonnell Douglas* framework, Plaintiff has failed to set forth specific facts showing a genuine issue for trial on his race discrimination claim.

### B. *Ortiz* Reasonable Factfinder Method

Consistent with *Ortiz*, a plaintiff can defeat summary judgment if a "reasonable factfinder" could "conclude that the plaintiff's race * * * caused the discharge or other adverse employment action." 834 F.3d at 765. "[A]ll evidence belongs in a single pile and must be evaluated as a whole." *Id.* at 766.

Taking a step back and viewing the evidence as a whole does not change the result reached under the *McDonnell Douglas* framework. In August 2010, Defendant marshalled and presented a substantial amount of evidence to show that Plaintiff stole time in July: photographs, video, a thirty-page report produced by a private investigator, and corroborating evidence based on Yates's and Rinaldi's own review of Plaintiff's pick-up and delivery reports. This evidence was made available to Plaintiff and his Union representatives over the course of three meetings in 2010. Plaintiff has not argued that Defendant made up this evidence or that it offered shifting explanations for why Plaintiff was terminated. Indeed, Plaintiff admits that he had no reason in

16

2010 to think that his race had anything to do with his termination.  All of this evidence amply supports a legitimate, non-discriminatory explanation for Plaintiff's termination.

The only "fact" Plaintiff offers to avoid summary judgment is that Abbott was terminated but reinstated when he committed a different infraction six months after Plaintiff was not reinstated.  To the extent this is even evidence of racial discrimination at all, it is pretty thin.  But once one considers the mountain of evidence that Defendant produced in favor of Plaintiff's termination for stealing time, Abbott and Plaintiff's dissimilar disciplinary histories, and Yate's factually unrebutted claim that Plaintiff's infraction is more serious Abbott's, it is clear that Plaintiff's claim of disparate treatment on the basis of race is entirely speculative.

Plaintiff's other atmospheric "examples" of race discrimination—drug testing, excusal of Abbott's tardies, and Defendant's route assignments—are too vague, conclusory, unsubstantiated, and disconnected from Plaintiff's 2010 termination to present a triable issue of fact that Defendant acted with racially discriminatory animus in this case.  Plaintiff fails to show that Rinaldi's excusal of Abbott's tardiness (assuming this occurred) has even an arguable connection to race.  Likewise, Plaintiff fails to offer evidence that Yates or Rinaldi decided who received route assignments or was drug tested.  Based on this evidence, no reasonable juror could conclude that Yates and Rinaldi terminated and then failed to reinstate Plaintiff because of his race rather than because he was stealing time and lying to his employer.  Defendant is therefore entitled to summary judgment on Plaintiff's race discrimination claim.[6]

---

[6] Because the Court grants Defendant's motion for summary judgment, it need not address Defendant's alternative request for summary judgment on Plaintiff's punitive damages claims.

**IV. Conclusion**

For the foregoing reasons, Defendant's motion for summary judgment [24] is granted. Judgment will be entered in favor of Defendant and against Plaintiff, and the case will be closed.

Dated: February 2, 2017

_____
Robert M. Dow, Jr.
United States District Judge